ARBA HOLMES, PLAINTIFF IN ERROR, v. W. T. WILHITE AND JOHN L. COLUMBIA, DEFENDANTS IN ERROR.

Practice: EXCEPTIONS. Exceptions relating to instructions given to a jury must be reduced to writing during the term at which the trial took place.

Contract: RESCISSION: RECOVERY OF AMOUNT PAID. Plaintiffs and defendants entered into a contract whereby defendants agreed to furnish plaintiffs certain machinery for the erection of a mill, including an iron tube to go through the dam, the whole to be completed on the first day of December, 1868. Plaintiffs on their part agreed to complete the dam, and erect the m ll house ready for the machinery, by the fifteenth day of October, 1868. Although not a part of the written contract, plaintiffs claimed that to enable them to erect the dam and the mill-house by the time limited, it was agreed that the tube for the dam should be furnished by the first of October, 1868. The defendants did not deliver it until late in November. Although, thus delayed, plaintiffs received the tube and completed the dam, but never erected the mill-house or did anything further under the contract. Shortly after they brought suit against defendants, to recover back money advanced on the contract, and for damages. *Held*, that if the tube was necessary to the proper completion of the dam, it should have been furnished whenever the dam was in that state of

advancement to require it, and not being so furnished, plaintiffs might have terminated the contract; as they did not chose to do this but received the tube and completed the dam, no rescission of the contract was shown, and plaintiffs were not in a situation to recover back the money they had advanced on it.

THIS was an action upon a contract in the following terms: "This article of agreement entered into this 20th day of August, 1868, between Holmes and Gould of the first part, and Wilhite and Columbia of the second part, witnesseth; that Holmes and Gould of the first part do agree to furnish to the parties of the second part the following: one tube to go through the dam, 36 or 40 inches in diameter, 18 or 20 feet long. One 30 inch Franklin Turbine Wheel. 2 pr. of 3½ feet old quarry burrs. 1 Bolt and Conveyor Reel, 30 inches diameter, 20 feet long. 1 set of blast elevators complete. 1 set of wheat elevators. 1 set of meal elevators. 1 Smut Machine to clean from 20 to 40 bushels per hour. 1 pair beam scales to weigh 20 bushels with hopper for do. All the shafting, gearing, pullies, and belts to run the above named machinery, also all the lumber necessary to do the mill-wright work, and to do the same with the exception of the flume. The above named work to be completed December 1st, 1868, for the sum of $4,870, in payments as follows: $1,000 cash in hand, $1,200 forty days after date, $1,170 on completion of the mill, and the balance $1,500 to be divided into three equal payments as follows. $500 a note at 60 days. $500 a note 90 days, and $500 note at 120 days from completion of mill. In consideration of the above the 2d parties agree to put the dam and flume complete, ready for the wheel; also to finish all the timber for the hust and build the mill-house complete, with floors and stairs, and also agree to have the mill-house ready for machinery by October 15, 1868; and do also agree to do all the hauling of machinery from the machine shop, and board all the hands while at work on the mill. They also

agree to pay to the parties of the first part, the sum of $4,870 in payments as above.

(Signed.)                          HOLMES AND GOULD.
                                  WILHITE AND COLUMBIA.
                                       By WILHITE.

Plaintiffs alleged as a breach, that although they duly performed all the conditions of the agreement, on their part which could be performed, and were on the first day of December 1868, and afterwards, ready and willing and duly offered to receive said machinery, and have such mill wright work done, but the defendants refused to furnish and deliver the machinery and do the said work; that defendants wholly failed to comply with their said agreement, to the great damage of plaintiffs, in the sum of six thousand two hundred and fifty dollars; that plaintiffs paid defendants sixteen hundred dollars upon the contract; and that plaintiffs erected the mill-house and made ready for the machinery and mill wright work in all things.

Defendant, Arba Holmes, in his answer, denied the allegations of the petition, and alleged that he and the said Gould did enter upon and commence the said work, and did procure and find the material necessary for performing the conditions of said agreement, on their part to be performed; that they prepared a large part of the machinery, and delivered to the plaintiffs the tube to go through the dam; that the plaintiffs did not by the 15th of October, 1868, build the mill dam, put in the flume and erect the mill house; that plaintiffs did not make the payments for said machinery according to the said agreement; and that by reason of the default on the part of plaintiffs, the defendant had been damaged in the sum of two thousand dollars.

Defendant admitted the payment of six hundred dollars in cash, and a span of mules worth four hundred dollars,

and asked judgment against plaintiffs for the sum of one thousand three hundred and fifty dollars.

The cause was tried before Mr. Chief Justice Mason, sitting in the district court of Otoe county, and a jury, at the March Term, 1871.

On the part of the plaintiffs John L. Columbia testified: " We commenced work on the 26th day of August. We did not get the tube on the first of October. On the last of November they sent the tube to us. We were ready for the tube about the middle of September, and sent for it the first of October, 1868, but it was not ready. Gould sent it about the last of November. We paid $600 in money and $450 in mules when the contract was signed, and afterwards $200 on the first of October, 1868. The tube was forty-two inches in diameter and eighteen feet long, and was worth $200 in a mill, but to us without the other machinery, was worth nothing. Gould sent to get the length of the shafting through the mill. Gould said in October, 1868, that they could not finish the machinery according to contract. The iron tube was to go through the stone dam, and be cemented into the dam, and without the tube we could not go on with the dam, and as they did not furnish the tube in time, we could not finish the dam before the ground froze, and the tube and dam both were washed out and rendered useless that winter. The mill was to rest on the dam, and could not be put up till the dam was done."

W. T. Wilhite also testified: " We sent two teams about October 1st, 1868. We sent a team a second time in November, after the tube. Each time Gould said they had not any of the machinery ready. On the first of May, Gould said he would finish the machinery if he could, and that he had some commenced but never finished it, or any of it, except the tube. We got out the timber, lumber and frame for the mill, and were ready in time to go on with the mill if we could have got the

machinery, but as we never got the machinery we lost all the timber, which now lies on the ground and is worthless. Gould said in the spring of 1869 that nothing but the tube was done. In October, 1868, the foreman showed me some machinery that they had begun to work out, but nothing was then complete. Gould said in the spring of 1869, that he had been obliged to cut up most of the shafting and to use considerable of the machinery in other mills. I was in the foundry in May, 1869, and no machinery was completed then."

William Lambert, a witness for the plaintiffs, corroborated the testimony above given, concerning the delay in the arrival of the tube and the erection of the dam.

On the part of defendant, Arba Holmes testified: "We proceeded with the work on the machinery for the mill, as far as we could before the mill house and dam were erected; about the first of October, 1868, we sent our millwright to take the measurement of the mill buildings so that we could proceed with the work; he found they had no buildings up and nothing in readiness. The last of October Wilhite was at the foundry, when I showed him the different articles of machinery made for them, and he was well pleased with them. This was after my dissolution of partnership with Gould; I informed Wilhite that Gould would continue and complete the work for them when they were ready for it; I did not see or hear of them until the following May, when I had some talk with them about the mill, and they left to make some arrangements with Gould; I did not see them until the fall of 1869, when they called at my house and demanded the money paid back to them. I answered them that I could not pay them any money, but if they would let me know when they got ready for the machinery I would finish it; I took an invoice of machinery that we had worked out, and the same was worth twelve hundred and fifty dollars, and the same could not be sold for one-half what it cost

us to work it out. The tube sent to plaintiffs was worth two hundred and fifty dollars cash. Gould mortgaged all the machinery in the foundry and it was sold on the mortgage in the spring of 1869."

John M. Bingham testified: "Defendant purchased a boiler shell, to be used in a flume to convey water to the wheel for the mill, and got all shafting necessary to run the mill and gearing, except one section of the main shaft, which was not got out because defendant did not know how long it was to be made, until the mill-house was put up. * * These materials were obtained by the defendant for plaintiffs in the summer and fall of 1868. All of the castings I have mentioned were got out before the month of October, 1868. I was on the grounds where the mill was to be put, in March, 1869, and neither the mill-dam or mill-house were then completed."

William L. Soper testified: "No mill-house was erected. Plaintiffs built a wall across the river, six feet at the bottom, and four feet at the top. It was a convex wall, with wing walls, about eighteen feet long. I do not think it was a sufficient mill dam. I saw the tube in the wall. It now lies in the river about one hundred feet below the wall where it was placed. It was washed out two or three weeks after the erection of the wall. Material was hauled for a building some time in the fall, and month of December, 1868."

W. W. Soper testified: "The plaintiffs have not since the fall of 1868, erected either a mill dam or the mill house. The tube was there in the fall of 1868. It was washed out in the latter part of the fall, or first of the winter of 1869. Material for a building was hauled there in the fall of 1868, but it was never erected."

Certain instructions to the jury were asked for by the defendant which were refused by the court. The jury returned a verdict for plaintiffs in the sum of eleven hundred and thirty-five dollars. Defendant filed a motion

for a new trial, and the same was taken under advisement by the court. At the December Term, 1871, the court overruled the motion for a new trial, and rendered judgment on the verdict.

The defendant, Arba Holmes, brought the case to this court by petition in error.

*Seth Robinson*, (with whom was also *E. E. Brown*,) for plaintiff in error, presented the following points:

I. *First.* Holmes and Gould were bound, upon performance by Wilhite and Columbia, to perform on their part by the first day of December, 1868; and in no case could they be liable for a breach of their agreement, and no such breach could possibly happen before that time, unless, after performance by Wilhite and Columbia, they distinctly incapacitated themselves to perform, and this they did not. 2 *Pars. Contr.*, 666, 667, *and notes.*

*Second.* The application of the principle above stated to the present case is not affected by the fact that irrelevant testimony, not objected to, was admitted, tending to show that Wilhite and Columbia proposed to erect their mill in such form that one end of it would rest on the dam, which would, therefore, have to be built, and the tube which was to go through the same furnished, before the mill-house could be erected. It is not affected by such testimony for the following reasons: 1st. The contract contains no covenant or provision for the erection of the mill in such form. 2d. It is not necessary that mills, in general should be so erected. 3d. There is no proof that the mill in controversy must needs have been so erected, or that Holmes and Gould knew that it must; which proof, though clearly objectionable in this case, if admitted without objection, might have justified the verdict, there being no error in the instructions.

*Third.* But Holmes and Gould were bound to perform by the first day of December, only in case Wilhite and

Columbia performed by the fifteenth day of October; and if the latter failed then, but performed after that, Holmes and Gould were entitled to a reasonable time after such tardy performance to perform on their part and to such damages as they might have sustained by reason thereof.

*Fourth.* Performance by Wilhite and Columbia was a condition precedent to their right to demand performance of Holmes and Gould. *Barruso v. Madan*, 2 *Johns.* 145. *Cunningham v. Morrell*, 10 *Johns.*, 203. *Parmelee v. Oswego & S. R. R. Co.*, 6 *N. Y.*, 74. *Grant v. Johnson*, 5 *N. Y.*, 247.

*Fifth.* The rights of the parties under the contract appear to be these: 1st. Performance by Wilhite and Columbia was a condition precedent but substantial performance was sufficient, so that though they failed to perform on the precise day, yet afterwards should perform, as such partial failure would not in this case be destructive of the contract but compensable in damages, and as Holmes and Gould had already received a substantial portion of the price to be paid, they were bound to perform within a reasonable time after such tardy performance. 2 *Pars. Contr.*, 679, 681. 2d. But here is, by confession, a total failure on the part of Wilhite and Columbia to perform the condition precedent, rendering performance by Holmes and Gould impossible. By the default of the former the latter never had an opportunity to perform. The former cannot recover on any ground; being themselves in default, they cannot take advantage of their own wrong to rescind the contract and recover the money paid. 2 *Pars. Contr.*, 679. And having wholly failed to perform the condition precedent they cannot sue on the contract for a failure which was inevitable by reason of their own default. *Holmes v. Boydston*, 1 *Neb.*, 346. 2 *Pars. Contr.*, 675. *Chitty Contr.*, *637–*638.

*Sixth.* The mill-house was never erected, and therefore the verdict cannot be sustained, independently of any errors in the instructions of the court. From and after the fifteenth day of October, 1868, Holmes and Gould became vested with a right of action against Wilhite and Columbia for failure to perform on their part; and this right of action could only be divested by an accord and satisfaction or a technical release. *McKnight v. Dunlop,* 5 *N. Y.,* 537. *Bowman v. Teall,* 23 *Wend.,* 306.

II. *First.* But, if it were possible to uphold the verdict by the testimony, still the court erred. Wilhite and Columbia, being by the contract first to perform and failing to do so, Holmes and Gould could not be in default. 2 *Pars. Contr.* 675. Though the latter were unable to perform, though they distinctly and unequivocally disabled themselves to perform, it would make no difference. For, where the plaintiff is bound by a covenant in the nature of a condition precedent, he is bound to perform it before he can complain of the defendant on any account. *Robb v. Montgomerg,* 20 *Johns.,* 15. *Sage v. Ranney,* 2 *Wend.,* 532. *Champion v. White,* 5 *Cow.,* 509.

In such case the rule is this: The plaintiff may, notwithstanding the defendant has incapacitated himself, go on and perform and then recover of the defendant his damages, relying upon the contract; or he may immediately rescind and recover what he has paid.

*Second.* A contract rescinded in part is rescinded in whole, rescinded as to one party is rescinded as to both. *Lattimore v. Harsen,* 14 *Johns.,* 330. *Coolidge v. Brigham,* 1 *Met.,* 547. *Towers v. Barrett,* 1 *Term,* 133. *Gillett v. Maynard,* 5 *Johns.,* 85. *Chitty on Cont.,* 640* note 2. *Battle v. Rochester Bank,* 3 *N. Y.,* 88. *Hunt v. Silk,* 5 *East,* 449. *Conner v. Henderson,* 15 *Mass.,* 319.

*Stevenson and Hayward*, for defendants in error, contended:

Exceptions must be reduced to writing at the same term at which the case is tried and verdict rendered. *Code, Sec.* 308.

If it be the law that a case may be passed over three terms of the court, and a bill of exceptions prepared, signed and filed fourteen months after the trial, then the statute may be entirely evaded, the pretection from long delays entirely lost to parties and no correct and complete bill of exceptions can be made. Cases must then come to this court, as this does, on so much of the testimony as counsel can remember for fourteen months. If it can be done one year, it can be for five years. This is clearly not the law. *Monroe v. Elburt*, 1 *Neb.*, 74. *Doe v. Brown*, 6 *Ohio State*, 12. *Kline v. Wynne*, 10 *Ohio State*, 223. *Hicks v. Person*, 19 *Ohio* 426.

But the exceptions filed show no error. The plaintiff in error, Holmes, cannot insist upon the first point in his motion for a new trial, because the record shows that at the time his first instruction was modified and changed by the court, he expressly *accepted* of such modification.

If both parties failed to comply with the terms of the contract, the plaintiffs below could recover back the money paid on the contract. The testimony of two witnesses, both undisputed, shows that about the first of October, 1868, Gould said they could not have the machinery ready according to their contract. Also, that in the winter of 1869, Gould cut up and used in other mills, most of the machinery that he had commenced, and Holmes swears that Gould mortgaged the machinery, and that in the spring of 1869, it was all sold under the mortgage. This shows that they failed to comply with, and abandoned the contract. This gave plaintiffs a right to recover back the

money paid on the contract. *Eaton v. Redick*, 1 *Neb.*, 308.

The whole proof shows that Wilhite and Columbia went on in good faith, made their first payments, put in their dam, got out the timbers and lumber for the mill, and on the 1st of October, 1868, were ready to use and sent for the machinery. They had then done all that could be done, without the tube.• In November, after the tube was received, they did the best that men could do to go on with the contract; while Holmes and Gould did nothing, but abandoned the contract and sold out their stock and machinery. They can not be benefited by their own wrong. 1 *Graham and Waterman on New Trials*, 323. *State v. Wissmark*, 36 *Missouri*, 592.

The third, fourth, and fifth points depend upon the weight and sufficiency of the evidence and cannot be decided where all the proof is not before the court. This case had lain fourteen months after trial and it was impossible for any counsel to remember all the evidence. The whole testimony of one Powell is left out. The plaintiffs below examined the carpenter who did the work on the mill, and not one word of his testimony is here. This court cannot consider the sufficiency of the proof unless it is all before the court. *Midland Pacific R. R. v. McCartney*, 1 *Neb.*, 404. *Morton v. Sanders*, 1 *Dana*, 14.

If this court were to consider these points, then the verdict should not be disturbed, because there is testimony sustaining it. *Breese v. State*, 12 *Ohio State*, 156. *State v. Lamont*, 2 *Wis.*, 437. *Cook v. Helms*, 5 *Wis.*, 107. *Lockwood v. Stewart*, 12 *Wis.*, 628. *Hendy v. Smith*, 28 *Georgia*, 308. *Bowman v. Torr*, 3 *Clarke*, (*Iowa*), 574.

Where the evidence is conflicting the verdict should not be set aside. *Edminston v. Garriston*, 18 *Wis.*, 594. *Robbins v. Alton Ins. Co.*, 12 *Missouri*, 381. 1 *Graham*

and . *Waterman on New Trials*, 389.    *McKnight v. Wells*, 1 *Missouri*, 13.

The verdict is clearly according to law.    The plaintiffs were entitled to recover back the money paid, with interest.    The jury gave them less than was paid even if we allow Holmes and Gould all that Holmes swore the tube was worth.    The damages were too low, and of this Holmes cannot complain.    Justice has been done between the parties, and the court will not grant a new trial, even if there has been a technichal error.  *Graham and Waterman on New Trials*, 388–398.

No other points were made in the motion for new trial and no others can be considered.    *Midland Pacific R. R. v. McCartney*, 1 *Neb.*, 404.


LAKE, CH. J. ·

Several errors are alleged to have occurred in the court below, but the only one we can here consider is that which relates to the sufficiency of the evidence to sustain the verdict.    Those exceptions relating to the instructions given to the jury, were not reduced to writing during the term at which the trial took place, as the statute positively requires, and therefore they must be deemed to have been waived.

But we think that, giving to the testimony all that can possibly be ·claimed of it by the defendants in error, it will not support the verdict, and therefore a new trial will have to be awarded.

By the terms of the written contract, about which there is no dispute, the plaintiff in error and one Gould, who was his partner, agreed to furnish certain machinery, lumber and labor, in the erection of a mill, which the defendants in error had undertaken to build.    And it was stipulated that the same was to be completed by the first day of December, 1868.

Holmes v. Wilhite and Columbia.

On the part of Wilhite and Columbia, the defendants in error, it was agreed that they would put in the dam and flume complete, ready for the wheel, build the mill house complete and have it ready for the said machinery by October 15, 1868. And this appears to have been necessary in order to have enabled Holmes and Gould to perform their part of the contract within the stipulated time.

The testimony shows that both parties entered upon the performance of their respective portions of the work, but the dam even was not completed until sometime after the first of December, the time fixed upon for the completion of the mill-wright work by Holmes and Gould.

Shortly after the completion of the dam, however, it was washed out, and destroyed, and Wilhite and Columbia never erected the mill house which was to recieve the machinery and work of the plaintiff in error. In this condition of affairs, Wilhite and Columbia seek to recover back the money advanced to Holmes and Gould, something over a thousand dollars, and the question to be decided is, can they do it?

It ought, perhaps, to be stated that it is claimed by the defendants in error, that the delay in the completion of the dam was occasioned by the failure of Holmes and Gould to furnish a certain iron tube, valued at some two hundred and fifty dollars, to go through the dam, in time to have enabled them to get it ready any sooner than they did.

The weight of testimony seems to be, that it was, in fact, necessary to have this tube when the dam was being built, so as to insert and cement it in its proper place, and it may have been the understanding of the parties that it should have been ready the first of October, as is claimed. If the fact be established that the tube was necessary to the proper completion of the dam, so as to fit it for the reception of the mill house, one end of

which it was to support, then I am of the opinion that it would be a reasonable construction of the contract to hold, that it should have been furnished whenever the dam was in that state of advancement to require it, and in time so as not to delay the work. And if it had not been so furnished, it is very likely that Wilhite and Columbia might have terminated the contract, and recovered back the money they had advanced thereon.

But they did not chose to do this. They received the tube about the last days of November, without any serious objection so far as can be gathered from the record, and went on and completed the dam, notwithstanding they had suffered a delay of considerably over a month, in consequence of not getting it earlier. Soon after this the dam was destroyed, as before stated, and nothing further was done by either party toward the completion of the work.

I do not think any rescission of the contract has been shown, but, on the contrary, that it is still open and subsisting between the parties to it. This being so, Wilhite and Columbia are not in a situation to recover back the money they had advanced on it.

The judgment must be reversed, and a new trial awarded.

REVERSED AND REMANDED FOR TRIAL DE NOVO.

Mr. JUSTICE MAXWELL concurs. MR. JUSTICE GANTT, having been of counsel in the court below, did not sit.